L. CHARLES WRIGHT, Retired Appellate Judge.
T.S.S. (mother) and G.W.S. (father) were married in 1990. One daughter was bom of the marriage. Following an initial hearing, the parties were divorced. The trial court granted temporary custody of the child to the paternal grandmother and allowed visitation rights to the parents. Following a final hearing, the trial court awarded custody of the minor daughter to the father.
The mother appeals, asserting that the trial court erred in awarding custody to the father.
In an initial custody determination the parties stand on equal footing, without a favorable presumption to either party. Santmier v. Santmier, 494 So.2d 95 (Ala.Civ.App. 1986). In determining which parent should have custody, the paramount consideration is the well-being of the child. Ex parte Hilley, 405 So.2d 708 (Ala.1981). An award of child custody is a matter within the discretion of the trial court. Cole v. Cole, 442 So.2d 120 (Ala.Civ.App.1983).
This court presumes that the trial court correctly applied its discretionary authority to adjudge the child’s best interests. Cole. The presumption arises because the trial court is in the best position to see and hear the witnesses and to resolve the issues of their credibility. Cole. It is our duty to affirm the decree if it is supported by credible evidence. Cole.
The mother and father met in 1988 at a “go-go” club, where the mother was work *355 ing as a dancer. The parties were married in August 1990. The ehild was bom in October 1990.
After the birth of the child, the mother began working in a sewing factory. In 1991 the parties separated and the mother filed for divorce. She returned to work as a go-go dancer. The parties subsequently reconciled, and the mother dismissed her divorce action. The parties separated again in October 1992 and have not lived as husband and wife since that time.
In the spring of 1993 the mother entered into a sexual relationship with J.L. In March 1993 the father hired an investigator to investigate the mother’s relationship and to gather evidence for a divorce action.
In August 1993 the mother and J.L. had a serious altercation. The mother temporarily moved in with the father. At this time the mother learned that the father had hired an investigator and that it was the father’s intent to get custody of the child. Following this revelation, the mother began to make allegations that the father had sexually abused the ehild.
The mother took the child to a doctor for an examination. The doctor referred the ease to the Department of Human Resources (department).
The father filed this action for divorce in August 1993, alleging incompatibility and adultery and requesting custody of the ehild. The mother filed a counterclaim, alleging incompatibility and requesting that the court order supervised visitation for the father, pending a final investigation of the abuse allegations.
The department’s investigation ended without any action being taken. The file was closed, indicating no finding of sexual abuse to support further action. The trial court entered a pendente lite order in February 1994, awarding custody of the child to the mother and granting the father visitation under the supervision of his mother.
From August 1993 through February 1994, while the investigation was taking place, the father had no contact with his .daughter. During this period the mother was living with her mother. The maternal grandmother had been employed as a go-go dancer and as a waitress for many years. She had been married seven or eight times and had served time in the state penitentiary for the sale of cocaine. The maternal grandmother suffered two “nervous breakdowns” while the mother and child were living with her.
In February 1994 the mother and the child moved in with the mother’s aunt. The maternal grandmother’s condition necessitated the move. The aunt had also been employed as a go-go dancer, claiming to be the first go-go dancer in Madison County. At the time of the hearing, the aunt was engaged in her fifth marriage. One of her children was serving a 10-year sentence in the state penitentiary for assault.
From February 1994 until the first hearing on June 20, 1994, the father had five supervised visitations with the child. Following each visitation, the mother and the aunt would have the child examined for sexual abuse. During this time the child was also in therapy.
In May 1994 Dr. Deborah Williams, a pediatrician specializing in ehild abuse cases, examined the child. Dr. Williams’s examination revealed a laceration in the rectal area. She opined that the laceration was consistent with penetrating trauma, and she was concerned that the child had been abused. The child told Dr. Williams, “My daddy stuck his finger in my tu-tu.” Dr. Williams stated that, in her opinion, the child had been coached to make that allegation. (It is interesting to note that the child made the exact allegation to each of the health care professionals and to the counselors who examined her.)
Following the new allegations, the department reopened its investigation. The social worker assigned to the case stated that, in her opinion, the child had been abused. The social worker, however, was uncertain as to the identity of the perpetrator and did not think that the child should be placed with either parent.
The guardian ad litem agreed that the child should not be placed with either parent. He recommended that the child be placed with the paternal grandmother.
*356 The paternal grandmother, who was 57 years old at the time of the hearing, had been employed with the same company for 21 years. She was married for over 80 years before her husband died. She has lived in the same house since 1963.
Following the initial hearing on June 20, 1994, the trial court granted temporary custody to the paternal grandmother. The placement was made subject to the supervision of the department. The parents were allowed to visit the child at the department’s office. On February 21, 1995, the trial court amended its order to allow unsupervised visitation. The trial court held the final custody hearing on May 24,1995.
At that hearing the paternal grandmother testified as to how well the child had adjusted. The child’s daycare provider testified to the same. Considering what the child had previously been through, such accomplishment is remarkable. The mother even testified that the child had not made any allegations of abuse.
The father testified that if he were awarded custody of the child, he would move into his mother’s house to avoid disrupting the child’s progress. The child would continue to attend the same school. The father’s ultimate goal is to buy a house of his own. He testified that he was unable to purchase his own home at the time of the hearing, because of the attorney fees that he had incurred from the custody battle.
The mother testified that she had recently purchased a home and that she was employed with a sewing factory. She had become very involved in her church. Members of the church and her pastor testified to that effect.
There appears to be a variance in the tones of the two hearings. There were remarkable allegations made by both parties in the initial hearing. The parties overt combat left little room for considering the best interests of the child.
There was a tone of reconciliation in the final hearing. It was apparent that the parties recognized the severity of their actions, as those actions related to the child. The child’s remarkable adjustment evidences that fact.
We have carefully reviewed the substantial record in this case. In accordance with the applicable principles of law, we find credible evidence to support the trial court’s award of custody to the father. The judgment is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.