717 So.2d 793 (1998)
Ex parte D.W.W.
(In re R.W.
v.
D.W.W.).
1961022.
Supreme Court of Alabama.
February 27, 1998.
*794 Jay E. Stover and Clifford L. Callis, Jr., Rainbow City, for petitioner.
Janice C. Hart and Laura Alfano of Hart & Alfano, Warrior, for respondent.
HOOPER, Chief Justice.
R.W. and D.W.W. were divorced in 1996. The trial court awarded custody of the couple's two minor children to the father, D.W.W., and granted restricted visitation rights to the mother, R.W. The Court of Civil Appeals affirmed the trial court's order granting custody to the father but reversed its visitation order. R.W. v. D.W.W., 717 So.2d 790 (Ala.Civ.App.1997). We granted certiorari review to consider that portion of the Court of Civil Appeals' opinion that addressed visitation privileges. We now reverse that portion of the Court of Civil Appeals' judgment reversing the visitation provisions of the circuit court's judgment, and we remand the case.
The visitation portion of the divorce judgment provided:
"Plaintiff [R.W.] shall be entitled to have visitation with the minor children every other weekend ... from Friday at 6:00 p.m. until Sunday at 6:00 p.m. and one evening of the intervening week; however, such visitation shall be exercised only at the maternal grandparents' home under their supervision and control and in no event shall the children be around [N.L., the mother's sexual partner] during any visitation period. Plaintiff shall be entitled to liberal telephone communication with the minor children....
"Neither party shall have overnight adult guests (family excluded) while [the] children are in their home and under their custody unless they are married thereto."
This visitation order was entered after ore tenus, nonjury proceedings. In reviewing this order, we must remember that an appellate *795 court cannot substitute its own judgment for that of the trial judge. Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App. 1997); see also Grubbs v. Crosson, 634 So.2d 593 (Ala.Civ.App.1994). Because the trial court has the advantage of observing the witnesses' demeanor and has a superior opportunity to assess their credibility, this Court cannot alter the trial court's judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong. Everett v. Everett, 660 So.2d 599, 602 (Ala.Civ.App. 1995). There is a strong presumption that the trial judge correctly exercised his discretionary authority as to visitation and correctly reached a conclusion advancing the best interests of the children. Hagler v. Hagler, 460 So.2d 187, 188 (Ala.Civ.App.1984); see also Hester v. Hester, 460 So.2d 1305, 1306 (Ala.Civ.App.1984). On our review of the record, we cannot say that the evidence contrary to the trial judge's decision was so great as to overcome this strong presumption of correctness. Indeed, the evidence in this case indicated that these visitation restrictions were reasonably drawn to protect the best interests of the minor children.
The trial judge first restricted R.W.'s visitation to specific times in the maternal grandparents' home and required that the grandparents supervise all such visits. Keeping in mind the presumption accorded the trial judge's ruling, we note the following: The testimony indicated that R.W. at times displayed poor parenting skills. From the testimony before the court, the judge could have found that R.W. had hit her daughter with the buckle of a belt, leaving marks on the child. The judge heard testimony indicating that R.W. has been an impatient parent, at times even shaking her son when his medication to control his hyperactivity was wearing off. In the face of such evidence, we cannot say that the trial judge was plainly and palpably wrong in imposing restrictions on R.W.'s contact with her children. We must reiterate that our duty as an appellate court is not to reweigh the evidence. Our duty is not to supplant or deny the trial judge's authority in order to reach the conclusions we would have advocated ourselves. In short, the duty of an appellate court is to affirm the trial court's judgment if it is supported by any credible evidence. T.S.S. v. G.W.S., 680 So.2d 354 (Ala.Civ.App.1996); Cole v. Cole, 442 So.2d 120 (Ala.Civ.App. 1983).
The record discloses a foundation of credible evidence indicating that unrestricted visitation with R.W. would not be in the best interests of the children. The restrictions placed on R.W.'s visitation are not overly broad, but were tailored to protect the children. The grandparents' presence will act both as a buffer between the children and R.W.'s occasionally temperamental style of parenting and as a support for R.W. as she continues to develop her parenting skills. These restrictions did not constitute an abuse of discretion, but, rather, were an appropriate exercise of the trial judge's authority to protect the children's welfare.[1]
The trial court further restricted R.W.'s visitation with the children by requiring that the visits occur outside the presence of N.L., who is R.W.'s sexual partner. R.W. and N.L. have lived together in a lesbian relationship since November 1994. During the pendency of the divorce action, R.W.'s children also lived in the home with R.W. and N.L. The evidence indicated that, during this time, N.L. became an active disciplinarian of the children. N.L.'s disciplinary methods were sometimes inappropriate. She threatened to deprive R.W.'s daughter of visitation with her father, as a form of punishment. The mother even admitted before the court that she personally would not choose N.L.'s methods to discipline her children, yet she continued to allow her sexual partner to punish the children harshly. Thus, the trial court could have found from the evidence presented that the children's best interest required that they have no contact with N.L.
*796 Furthermore, the trial court did not abuse its discretion in considering the effects on the children of their mother's ongoing lesbian relationship. Both women are active in the homosexual community. They frequent gay bars and have discussed taking the children to a homosexual church. Although they do not engage in intimate sexual contact in front of the children, they openly display affection in the children's presence. Already, the children appear to have been detrimentally affected by their mother's relationship and by their contacts with her sexual partner. Evidence was presented indicating that, after moving in with R.W. and N.L., the children began using inappropriate and vulgar language and required psychiatric counseling. The mother herself admits that her daughter began having problems with manipulation and lying. The evidence showed that this child also experiences problems dealing with anger and that she sometimes acts violently.
Even without this evidence that the children have been adversely affected by their mother's relationship, the trial court would have been justified in restricting R.W.'s visitation, in order to limit the children's exposure to their mother's lesbian lifestyle. When a noncustodial parent is involved in a continuing homosexual relationship, restrictions on that parent's visitation rights have been widely held to be proper. Caroll J. Miller, Annotation, Visitation Rights of Homosexual or Lesbian Parent, 36 A.L.R.4th 997 (1985). Restrictions such as those at issue here are common tools used to shield a child from the harmful effects of a parent's illicit sexual relationships  heterosexual or homosexual.[2] Diane M. Allen, Annotation, Propriety of Provision of Custody or Visitation Order Designed to Insulate Child from Parent's Extramarital Sexual Relationships, 40 A.L.R.4th 812 (1985). Moreover, the conduct inherent in lesbianism is illegal in Alabama. Ala.Code 1975, § 13A-6-65(a)(3). R.W., therefore, is continually engaging in conduct that violates the criminal law of this state. Exposing her children to such a life-style, one that is illegal under the laws of this state and immoral in the eyes of most of its citizens, could greatly traumatize them. Given both the demonstrable harm to these children that has already occurred and the potential for harm through continued exposure to their mother's lifestyle, we cannot hold that the trial court abused its discretion in imposing these limitations on R.W.'s visitation.
The Court of Civil Appeals concluded that the trial judge had no valid basis for imposing these visitation restrictions. In reversing the order of the trial court, the Court of Civil Appeals relied primarily upon several statements made by the trial judge to the effect that he traditionally allows liberal visitation for the noncustodial parent. However, these were clearly statements of the trial judge's general philosophy toward child custody cases. They were made before the bulk of the evidence in this case was presented. The judge could have found extenuating circumstances justifying a departure from his usual approach. The record indicates that such extenuating circumstances did indeed exist.
The trial judge had a valid basis for his visitation restrictions  he was acting in the best interests of the children. In domestic relations cases a minor child has an inalienable right to the maximum protection of the judiciary; all other rights are secondary. There was no clear abuse of discretion to justify the Court of Civil Appeals' reversal. Although the judges of the Court of Civil Appeals might have reached a conclusion different from that of the trial judge if they had been sitting in the trial judge's place, it was error for them to substitute their judgment for that of the trial judge. Unless the trial court is plainly wrong in its decision, an appellate court should not interfere with its discretionary rulings. This is particularly true in child custody and visitation cases, where the parties' credibility is often the determinative factor. In these situations, the trial judge, who has actually seen and heard *797 the parties and the witnesses, is infinitely more qualified to make a decision than an appellate court, which must make its determination from a cold record.
That portion of the Court of Civil Appeals' judgment reversing the visitation provisions of the circuit court's judgment is reversed. The case is remanded for the Court of Civil Appeals to reinstate that portion of the circuit court's judgment.
REVERSED AND REMANDED.
HOUSTON and BUTTS, JJ., concur.
MADDOX and SEE, JJ., concur in the result.
KENNEDY and COOK, JJ., dissent.
KENNEDY, Justice (dissenting).
Because the main opinion seems to be more interested in providing social commentary than in protecting the best interests of these parties' two children, I dissent.
In an apparent attempt to play to public opinion, the main opinion has ignored the sound reasoning of the Court of Civil Appeals and has mischaracterized much of the evidence presented in this case.[3] In fact, one reading the main opinion may get the impression that the trial court's decision is supported by a wealth of evidence. However, I can find no evidence to support the type of severe visitation restraints placed on R.W., especially when viewed in light of D.W.W.'s documented history of alcoholism and abuse. While I am not attempting to condone R.W.'s lifestyle, I cannot ignore the fact that the trial court's decision appears to be founded primarily on prejudice.
Drawing from the record, I find the following evidence equally relevant to the best interests of these children; that this evidence was not addressed by the trial court or in today's main opinion, however, tells more about what I perceive to be the true motive behind the restrictions placed on R.W.'s visitation privileges:
1) D.W.W. has a history of serious alcohol abuse and violence.
2) D.W.W. had received numerous D.U.I. citations before his marriage, one while R.W. was pregnant with their first child, and one during the pendency of this action.
3) D.W.W. ran into a tree stump, totalling his car, while driving intoxicated with his daughter in the vehicle. She was 23 months old at the time and was not secured in a child safety seat.
4) D.W.W. has been charged with domestic abuse on three occasions, and R.W. testified that there were many unreported incidents of abuse during their 10-year marriage.
5) In one offense report, the police cited D.W.W. for third-degree assault and described him as "highly intoxicated and using abusive language." In another report, D.W.W. was arrested for third-degree assault and, on that occasion, the police noted a bruise on R.W.'s left eye and were forced to apprehend D.W.W. after he fled the scene on foot. Despite this evidence and a guilty plea on one assault charge, D.W.W. testified that he has never hit his wife.
6) On one occasion, D.W.W. closed his infant son in a clothes dryer.
7) D.W.W. has consistently demonstrated his willingness to disparage R.W. in front of the children and to use them as pawns in this dispute.
8) D.W.W. has threatened to kill R.W., the children, and others.
9) On several occasions, the daughter's school complained about her personal hygiene and manners following her weekend visits with D.W.W. D.W.W. also allegedly increased his son's Ritalin dosage without consulting the child's physician.

*798 10) The children often returned from D.W.W.'s house with flea bites, and both contracted scabies after visiting their father.
11) Although D.W.W. had been ordered to pay child support, the mortgage on the marital home, and half of the children's daycare bill, the home mortgage remained in default throughout this proceeding and the children's daycare facility had to sue to collect the unpaid balance.
In an effort to buttress the trial court's reasoning, the main opinion ignores the past effects of D.W.W.'s behavior on the children and argues that the children have been adversely affected by their mother's relationship with N.L. In reality, many of the children's learning and behavioral difficulties began before R.W. separated from D.W.W. and therefore could not be attributed to R.W.'s relationship with N.L., as the main opinion implies. The evidence showed that the children had excelled in school over the year and a half they were in their mother's custody, and that N.L., who is a child guidance counselor, had spent many hours working with the parties' daughter to improve her spelling and her motor skills.[4] The main opinion also states that R.W. has shown impatience with her children in the past. However, the record indicates that R.W. spanks the children less often than D.W.W. does, and that the marks on the daughter, addressed in the main opinion, actually occurred when R.W. grabbed the daughter's arm to rescue her from drowning in the deep end of a pool.
The main opinion's true emphasis seems to be on the supposed illegal nature of R.W.'s lifestyle, and it goes to great lengths to paint a radical picture of R.W.[5] The main opinion questions R.W.'s parental fitness, based on the alleged criminal nature of her relationship with N.L. Despite a complete lack of evidence regarding the specifics of R.W.'s sex life, the main opinion accuses R.W. of "continually engaging in conduct that violates the criminal law of this state," 717 So.2d at 796, and suggests that lesbianism, in general, is illegal under § 13A-6-65(a)(3), Ala.Code 1975. Under § 13A-6-65(a)(3), Ala.Code 1975, anyone who engages in oral sex with a person to whom they are not married, regardless of the gender of the persons involved, is guilty of sexual misconduct. Ignoring the presumptuous nature of its allegation, I am bothered by the main opinion's implication that a violation of this statute is tantamount to parental unfitness. Nevertheless, the main opinion's fixation with this particular aspect of R.W.'s life further illustrates my concern that these children's best interests are not the primary focus of today's decision. In reality, the children are far more likely to be traumatized and injured by their father's illegal activities than they are by any potential violation of § 13A-6-65(a)(3), Ala.Code 1975.
I believe the trial court abused its discretion by severely limiting R.W.'s visitation, while granting full custody to D.W.W. The main opinion accuses me of dealing with issues outside the scope of this review; however, our role is to determine whether the Court of Civil Appeals erred in concluding that the trial court's order was not supported by the evidence. This necessarily involves reviewing the foundation of the trial court's order and, although that order is entitled to a presumption of correctness, I cannot support a judgment that appears to be influenced more by prejudice than by the facts. Prejudice is not within the discretion of the trial court and, in reviewing the record, I find no reason, other than prejudice, to explain the trial court's willingness to ignore D.W.W.'s outrageous conduct while so severely restricting R.W.'s visitation. Unfortunately, those joining the main opinion, in their own haste to separate these children from their *799 mother's lifestyle, seem just as willing to vilify R.W. while ignoring D.W.W.'s proven history of alcoholism and abuse. I can find no valid basis to reverse the judgment of the Court of Civil Appeals; therefore, I must dissent.[6]
COOK, Justice (dissenting).
I agree with the Court of Civil Appeals that the visitation order in this case is an abuse of discretion; thus, I dissent. The visitation order is overly restrictive, and a less restrictive order would accomplish the stated goal of the trial court, that is, that "in no event shall the children be around [N.L.] during any visitation period." The order requires that visitation be exercised "only at the maternal grandparents' home under their supervision and control." The order by its terms limits visitation to the "home" of the maternal grandparents and, thereby, prevents any other interaction of the mother with the children. The main opinion concludes that this restriction is justified, by citing specific instances of poor parenting skills of R.W. By restricting visitation to the "home" of the maternal grandparents, the order is ambiguous and subject to the interpretation that it prevents the maternal grandparents from consenting to or accompanying R.W. and the children to activities outside of the home.
The order further states that "[n]either party shall have overnight adult guests (family excluded) while [the] children are in their home and under their custody unless they are married thereto." Under the express terms of the order, this language could not impact the mother, because visitation for the mother would occur only at the home of the maternal grandparents, and never in the mother's home. The express language relating to overnight guests cannot be construed to be applicable to the maternal grandparents because there is no evidence that the maternal grandparents are parties. Therefore, this portion of the order applies only to the father, and I am not aware of any evidence that present or potential friends or colleagues of the father would have any impact, negative or otherwise, on the children.
Admittedly, divorce, custody, and visitation orders present situations of some complexity. There is no question that this is a case charged with philosophical emotion. The main opinion suggests that R.W., because of her relationship, "is continually engaging in conduct that violates the criminal law of this state." The trial court found R.W.'s conduct to violate the laws of nature. Stripping aside this philosophical emotion, the question remains: Is this visitation order so broad that, in part, it is not supported by the evidence? I believe it is. Therefore, I dissent.
NOTES
[1] Justice Kennedy's dissent discusses extensively the faults of the children's father. That discussion has no relevance to the issues before this Court. The Court of Civil Appeals affirmed the order placing the children in their father's custody. That order has not been appealed. It is not for us to presume error where none has been presented. Our role in this case is to review the trial judge's determination that R.W. should not have unlimited visitation with the children. The suggestion that our role in this case is anything else seriously misconstrues our judicial purpose.
[2] We would also note that the restriction against all overnight adult guests when the children are present in the home applies equally to both parents. The trial court made no distinction between homosexual and heterosexual relationships. The trial court's restriction, therefore, protects the children from exposure to all extramarital sexual relationships engaged in by either parent, not just homosexual relationships.
[3] The main opinion states that the Court of Civil Appeals "relied primarily" upon several statements made by the trial court. However, the Court of Civil Appeals specifically stated that it could "find no apparent valid basis for the restrictive visitation requirements imposed upon the mother," R.W. v. D.W.W., 717 So.2d 790 (Ala.Civ.App.1997), and that this lack of evidence was only further buttressed by the trial court's statements.
[4] The children's report cards, along with several awards for effort and citizenship, were admitted into evidence at the hearing. In addition, there was no evidence that the children, as the main opinion states, had "required psychiatric counseling," 717 So.2d at 796, only testimony that D.W.W. had begun taking them to his sessions with his alcoholism therapist.
[5] Once again, the main opinion fails to include certain facts  that R.W. had decided to take the children to her parents' Methodist church and that R.W. and N.L. socialize almost exclusively with coworkers and family.
[6] As Justice Cook points out in his dissent, the trial court's order is overly restrictive. It also fails to address holiday visitation, and it will prevent R.W. from spending even supervised time with her children at a park or shopping mall.