This is a child custody case.
On November 8, 1983, the Jefferson County Department of Pensions and Security (DPS) filed a petition to terminate the parental rights of Christine Redmon to custody of her daughters, Christine LeShaun Redmon and Yvette Redmon. On April 16, 1984, after an ore tenus hearing, the trial court terminated all legal rights of the mother in her children. Hence, this appeal was taken.
The mother contends DPS did not meet its burden of proof of showing no viable alternatives or less drastic measures. We have stated that this is one of the foremost considerations in terminating parental rights. Miller v. Alabama Department ofPensions and Security, 374 So.2d 1370 (Ala.Civ.App. 1979). In that case we also set out these less drastic measures:
 "For example, a court would certainly consider returning the child to parental custody on a trial basis subject to certain definite conditions being met and subject to supervision by DPS workers or other trained personnel; or temporary custody in a foster home with specific visitation with the child and conduct requirements to be met by parents; or that the parents are to be deprived of custody temporarily pending a correction of deficiencies in the home environment that were having or would have a harmful effect on the child should the child be placed back in the family relationship."
We find that such alternatives were considered. The facts leading up to this petition start in 1975. This was the mother's first contact with DPS and concerned a request for financial aid. DPS's first involvement with the parent/child relationship came in 1978 when they received a neglect complaint from Children's Hospital in Birmingham. Christine LeShaun Redmon had been brought into the hospital and was found to be suffering from malnutrition and severe diaper rash. The mother had allegedly disappeared after admitting the child and appeared to be intoxicated. The child was removed from the mother's custody, due to neglect, in February 1978, and placed in the legal custody of DPS.
Investigation reports show the mother graduated from high school in 1976, but had been employed only once for two weeks as a dishwasher. She testified that she has not tried to get another job and relies on food stamps for her only means of support.
DPS allowed the mother visitation of the child and required the mother to show she could maintain a home for the children before this child would be returned to her. During this time, and up until the date of trial in this case, reports show the mother had no single place to live but instead stayed either with the maternal grandmother or one of several men. Many times the DPS worker was unable to locate the mother or the children. In spite of the non-compliance with the DPS goals and in spite of the fact that the mother did not appear for the hearing to regain custody of the child, the court returned the child to the mother's custody in July 1979.
More complaints of neglect and abuse were received by DPS in 1980. Visits by the DPS worker found the children ill clothed and filthy, with scars and sores on one child's back from apparent beatings. The mother was frequently found intoxicated. Custody of Yvette Redmon was awarded *Page 1319 
to the maternal grandmother in March 1981.
DPS continued working with the family of these children but the home environment showed little progress. The grandmother's home was constantly filthy with old liquor bottles and children's dirty clothes strewn all over the house. More complaints of abuse were received in December of 1981 and the worker arrived to find the grandmother passed out on the floor of the living room in a highly intoxicated state, dirt and clothes throughout the house, weeks of dirty dishes and old food piled on tables and cabinets, and very little edible food in the house. More scars were found on one child's back.
In June 1982, DPS was awarded custody of both children. DPS then allowed visitation and started working again with the mother. Specific goals were worked out between the mother and DPS. In order for the mother to regain custody, she was required to make bi-monthly visits verified ahead of time by telephone; get a job or apply for social security based on physical disability; and get some type of reliable transportation. Again and again these goals were not achieved. In the last two years, the mother visited the children only five or six times. The record also shows that in May of 1983, the mother was arrested for public drunkenness. After the above "less drastic" measures were tried and failed, DPS filed the petition for termination of parental rights.
The mother next attacks the statute under which the court found the children dependent on the grounds that it is inconsistent. § 12-15-65, Code of Alabama 1975, lists, among other things, the standards of proof for hearings involving (1) delinquency, (2) in need of supervision and (3) dependency. Section 12-15-65 (d) sets the burden of proof on delinquency as "beyond a reasonable doubt" while § 12-15-65 (e) sets the burden of proof on dependency and in need of supervision as "clear and convincing." The mother states the burden of proof should be "beyond a reasonable doubt" throughout the statute in order to be consistent.
Alabama courts have long held that the burden of proof for termination of parental rights is "clear and convincing."Vinson v. Agape of Central Alabama, Inc., 416 So.2d 1075
(Ala.Civ.App. 1982). The standard of proof for determining guilt or innocence of a child accused of a crime is "beyond a reasonable doubt." A different standard of proof is permissible if guilt or innocence of a crime is not involved. Ash v. State,424 So.2d 1381 (Ala.Crim.App. 1982). By the same reasoning, a different standard of proof for dependency is permissible in the case at bar.
The mother further alleges that the trial court erred in failing to track the language of § 12-15-65 (e) in its order. The statute says proper disposition of a case is based on a finding that the child is "dependent and in need of care and supervision." The trial court in this case found both children to be "dependent children in need of the court's protection."
We have previously held that failure to track the language of § 12-15-65 is not reversible error. Phillips v. AlabamaDepartment of Pensions and Security, 394 So.2d 51 (Ala.Civ.App. 1981). This is especially true when the final order grants the petition of DPS which does track that language. Phillips,supra. No error exists in this regard.
The mother also objects to the failure of the court to state the standard of proof used. Appellant cites no cases to support an argument that there is a requirement that the trial court set out the standard of proof used. There is no reason to believe that the court did not make its finding based on clear and convincing proof as required by law.
Finally, the mother argues that there was not sufficient evidence to support the court's termination of her parental rights. The court's judgment in cases of this nature, after hearing the evidence ore tenus, will be given every favorable presumption and will not be disturbed unless *Page 1320 
palpably wrong. Smith v. State Department of Pensions andSecurity, 340 So.2d 34 (Ala.Civ.App. 1976).
The facts of the case show a permanent incompetence of the parent. DPS has determined the children potentially adoptable and feels the transition would be better now than two or three years from now. We hold that DPS has shown the termination of parental rights will better serve the future welfare of the children.
For the foregoing reasons, we find no error in terminating the mother's parental rights.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.