This is a child custody case.
On August 22, 1985 Catholic Family Services (CFS), a child-placing agency licensed by the Department of Pensions and Security (DPS), filed a petition seeking temporary custody of Ashley Charlene Jensen. The following day, at the conclusion of the shelter care hearing on the petition, the court ordered that Ashley be placed by DPS in a licensed foster home with the provision that she was not to be placed in the same foster home where her half-sisters were presently residing.
On October 21, 1985 a hearing was held to determine with whom temporary legal custody of Ashley should vest. After reviewing the evidence the court entered an order finding Ashley Charlene Jensen to be a dependent child and placing her in the temporary legal custody of the Shorts, intervenors in this cause. It is from this order that Shelia Jensen, the mother, appeals.
On appeal Ms. Jensen argues that the trial court abused its discretion by placing Ashley in the custody of the Shorts instead of in the foster home where her half-sisters were residing. Ms. Jensen also states that it was her desire to have Ashley placed with a Catholic family and that the trial court abused its discretion by disregarding *Page 91 
her religious convictions and placing Ashley with the Shorts, who are not Catholic. We disagree.
The record reveals that Ashley Charlene Jensen was approximately thirteen months of age at the time of the initial hearing. Shelia Jensen, Ashley's natural mother, has never been married, and Ashley's purported father has never even seen her. Ms. Jensen also has twin daughters, five years of age, who were placed in foster care with CFS when Ashley was eleven months old. Ashley and the twins are half-sisters in that Ashley has a different father than the twins.
Shortly after Ms. Jensen placed her twin daughters with CFS, she placed Ashley with a friend, Doris Ferguson, who was considering the possibility of adopting Ashley. After a couple of weeks, Ms. Ferguson informed Ms. Jensen that she would be unable to adopt Ashley. She then told Ms. Jensen that she knew of a couple, the Shorts, who were interested in adopting Ashley. Thereafter, Ms. Jensen met with the Shorts to discuss their financial circumstances, home environment, and interest in adopting a child.
On August 20, 1985, a week after this meeting between Ms. Jensen and the Shorts, Ms. Jensen signed an adoption consent form and placed Ashley in the physical custody of the Shorts. On August 22, 1985 the Shorts filed a petition in the Probate Court of Madison County seeking to adopt Ashley.
On August 21, 1985, the day after Ms. Jensen signed the adoption consent form, she was visited by a social worker from CFS. This social worker told Ms. Jensen that she would have to be reported and that as far as she knew an independent adoption of the type Ms. Jensen and the Shorts entered into was illegal. This social worker also told Ms. Jensen that she had made arrangements to have Ashley placed in the home where her half-sisters were residing. The following day Ms. Jensen declared that she had changed her mind about the adoption and signed a revocation of consent to adopt which was prepared by the same social worker. The social worker then filed a petition seeking temporary legal custody of Ashley.
Thereafter, the shelter care hearing was held on the petition placing Ashley in the temporary custody and foster care of DPS. Subsequently, the Shorts filed a motion to intervene and a motion for home study by DPS, both of which were granted.
In October 1985 a dispositional hearing was held to determine who should have custody of Ashley. At this hearing Ms. Jensen admitted that she was unable to care for her child, and requested that Ashley be placed with CFS for foster care and adoption. She stated that it was her understanding that the family caring for Ashley's half-sisters had expressed an interest in caring for Ashley as well. She stated that she did not know this family but that she believed they desired to adopt all three of her daughters. Ms. Jensen also testified that she believed the family caring for her twins was practicing the Catholic religion. She testified that she was Catholic and that she desired to have her daughters raised in that faith. She did not, however, testify as to the frequency of her religious attendance nor as to the strength of her religious convictions.
The Shorts were also present at the hearing to determine legal custody of Ashley. They testified that they were unable to have children and that they had been trying to adopt a child. Prior to this time, they had also been foster parents to several children. The Shorts also testified that they were financially and emotionally able to care for Ashley. Additionally, the evidence reveals that the Shorts received a very favorable report as a result of the home study by DPS.
Following the presentation of the evidence, the court ordered that Ashley be placed in the temporary legal custody of the Shorts.
The overriding consideration in a child custody case is the best interests of the child. Brown v. Alabama Department ofPensions Security, 473 So.2d 533 *Page 92 
(Ala.Civ.App. 1985). Factors to be considered by the trial court in determining what is in the best interests of the child include the sex, age, and health of the child, the child's emotional, social, moral, and material needs, and the parties' ages, character, stability, health, and home environment.Johnson v. Sparks, 437 So.2d 1308 (Ala.Civ.App. 1983). Religion may also be considered in custody cases so long as religion itself is not the sole determinant but is considered together with all of the other circumstances to determine what would promote the child's best interests. Clift v. Clift,346 So.2d 429 (Ala.Civ.App.), cert. denied, 346 So.2d 439 (Ala. 1977).
Another factor to be given weight in child custody cases is whether siblings should remain together. Although the general rule is that siblings should not be separated in the absence of compelling reasons, this policy is but one factor to be considered in light of the facts and circumstances of each particular case, keeping ever mindful that the paramount question to be decided is what will promote the best interests of the child. M.D. v. B.D., 336 Pa. Super. 298, 485 A.2d 813
(1984); see also, Commonwealth v. Reitz, 193 Pa. Super. 125,163 A.2d 908 (1960); Wallace v. Wallace, 420 So.2d 1326 (La.Ct.App. 1982).
Upon a judicial determination of dependency, the trial court has the authority to transfer legal custody of the child to any individual "who, after study by the department of pensions and security, is found by the court to be qualified to receive and care for the child." § 12-15-71-(a) (3)c, Code 1975.
In the case at bar, a home study was requested by the Shorts and was ordered by the court. A home study of the Shorts was thereafter conducted, resulting in a very positive report of the Shorts' ability to care for a child. The report found the Shorts to be in good health, in a financially sound condition, and, in general, to be a very stable and compatible couple, capable in every respect of providing a proper environment for the development of a child.
The determination of the best interests of the child is an exercise of judicial discretion based upon the evidence and, absent a clear abuse of that discretion, the judgment of the trial court will not be disturbed on appeal. Matter of Redmon,460 So.2d 1317 (Ala.Civ.App. 1984).
Having reviewed the record in light of the attendant presumptions, we find no abuse of discretion by the trial court. Shelia Jensen, Ashley's mother, admitted that she was not capable of caring for her child. Therefore, the court was called upon to decide with whom Ashley's best interests would be served. Although Ms. Jensen's desire is to have her children placed together and raised in accordance with the Catholic faith, the law of this state does not mandate that custody be premised upon such grounds.
In determining what would best promote Ashley's welfare and interests, the court was required to review the factors set forth above in light of the relevant circumstances of her case. The record reveals that Ms. Jensen's religious preference and her desire to have Ashley placed with her half-sisters were among those factors considered by the court.
Based on the evidence in the record before us, we cannot say that the trial court erred in placing Ashley in the temporary legal custody of the Shorts. The trial court's decree is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 93