Anthony Wayne Dunn ("the father") sued Cynthia A. Dunn ("the mother") for a divorce and sought a division of the parties' property and an award of custody of the parties' two minor children. The mother answered and counterclaimed, seeking, among other things, an award of custody of the children. On August 24, 2005, the trial court entered an order divorcing the parties and reserving all other issues for a later determination. A guardian ad litem was appointed to represent the children.
On January 3, 2006, the trial court entered an order in which it, among other things, awarded each party custody of one of the two children, waived child support, and fashioned a visitation schedule. In that January 3, 2006, order, the trial court addressed and divided some, but not all, of *Page 812 
the marital property. Accordingly, the January 3, 2006, order did not constitute a final judgment. See Blankenship v.Blankenship, 963 So.2d 112 (Ala.Civ.App. 2007) (a divorce order that did not divide the marital property or marital debt was not sufficiently final to support an appeal); andGrubbs v. Grubbs, 729 So.2d 346, 347
(Ala.Civ.App. 1999) (concluding that an order that failed to divide all the parties' marital property was nonfinal). The father filed a purported postjudgment motion on February 1, 2006. However, "[a] true postjudgment motion filed pursuant to Rule 59(e)[, Ala. R. Civ. P.,] may only be made in reference to a final order or judgment. Rule 59(e); Ex parte TroutmanSanders, LLP, 866 So.2d 547, 549-50 (Ala. 2003); seealso Malone v. Gainey, 726 So.2d 725, 725 n. 2 (Ala.Civ.App. 1999)." First Southern Bank v. O'Brien,931 So.2d 50, 52 n. 3 (Ala.Civ.App. 2005).
On May 18, 2006, the trial court entered a final judgment in which it fully addressed the issue of a property division and disposed of the remaining issues pending between the parties. We note that the father erroneously asserts that the May 18, 2006, judgment was a nullity because, he contends, it was entered outside the 90 days allowed by Rule 59.1, Ala. R. Civ. P., which sets forth time limits for ruling on a valid
postjudgment motion. We conclude, however, that the May 18, 2006, judgment constituted the final judgment in this matter. The father filed his notice of appeal on June 6, 2006, and, therefore, the appeal was taken from a final judgment and was timely filed. See Rule 4(a)(1), Ala. R.App. P. (an appeal must be filed within 42 days of the entry of a final judgment).[1]
The majority of the evidence presented at the ore tenus hearing concerned the issue of custody of the parties' two children. During the ore tenus hearing, the trial court noted that, although it was clear to the court that the parties loved the children, the trial court believed that it could have properly contacted the Department of Human Resources concerning the conduct of the parties with regard to the children during the pendency of these proceedings. No useful purpose would be served by a detailed recitation of all the evidence and allegations that the parties presented to the court; accordingly, we briefly set forth a general statement of the facts as they relate to the issue of custody.
The parties have two sons; at the time of the ore tenus hearing, one son was eleven years old and the other was three years old. The parties separated in July 2004, and during their separation they alternated custody of the children. The father moved from Fayette to Cullman and enrolled the oldest child in school in Cullman. Accordingly, custody of that child was transferred to the mother only on some weekends. However, the parties continued to alternate custody of their then two-year-old son on a daily basis, which required the parties to place the child in a vehicle for a 90-mile trip each day. At the ore tenus hearing, the trial court expressed disapproval of that arrangement. At the conclusion of the hearing, the trial court ordered the parties to immediately implement a custody arrangement whereby the mother had custody of the younger child, the father had custody of the older child, and the parties alternated weekend visitation with both children. The trial court also instructed the parties to stop attempting to communicate with each other through the oldest child. *Page 813 
Two altercations arose between the parties in the summer of 2004, and those altercations resulted in the parties' eventual separation. The mother filed domestic-violence charges against the father in connection with one of the incidents; however, she waited until October 2004, after the father had sought temporary custody of both children, to file those charges. The father was convicted in the district court in connection with those charges and, at the time of the hearing, had appealed that conviction to the circuit court. The record indicates that the trial court ultimately determined that there was not sufficient evidence to support the domestic-violence allegations against the father.
The father alleged that as a result of the district-court conviction he lost his job as a court-referral officer; he blamed the mother and her attorney for the termination of his employment. The father has not sought employment since losing his job. The trial court clearly did not find credible the father's claims that he could not seek or obtain employment because he had to care for the parties' youngest child and transport the child between the parties' homes on a daily basis.
The mother accused the father of being manipulative. A psychologist who evaluated the parties also reached that conclusion. The evidence supports a finding that the father had been controlling during the parties' marriage and that he had interfered with the mother's relationship with and ability to discipline the older child. Although the father presented evidence indicating that the older child was concerned about leaving the younger child alone with the mother, some evidence in the record would support a conclusion that the father had planted those concerns in the child.
The mother suffers from bipolar disorder, and it is undisputed that that disorder caused a great deal of strain on the parties' relationship and on the mother's ability to care for the children during the parties' marriage. The father presented evidence indicating that on several occasions the mother had failed or forgotten to retrieve the youngest child from day care. The mother has a history of failing to take her medications for her bipolar disorder. The mother testified that she had been functioning much better since her separation from the father and that she was consistently taking her medications. On questioning by the trial court, the mother stated that she recognized the importance of continuing to take her medications in order to prevent the possibility of endangering the children. The mother insisted that the knowledge that the father was not in the house to help with the children served to encourage her to take her medications; she explained that she was committed to taking the medications so that she could take care of the children. The mother felt that she could effectively parent both children if she were awarded custody. The mother, who is a hospice nurse, testified that her parents and the man she is dating are available to help care for the children if she is called to work at night.
The mother testified that she is not good at confrontations and that that had contributed to an inability to discipline the parties' oldest child. The mother also claimed that the father's interference or refusal to support her disciplinary efforts during the parties' separation had affected her ability to effectively discipline the oldest child. The father insisted that he had not had any difficulty in disciplining the oldest child. The father testified that his family lived near him and helped him in caring for the children when needed.
The guardian ad litem submitted a report to the trial court noting that, although they had demonstrated "serious lapses in judgment," both parties were stable and *Page 814 
capable of caring for the children. The guardian ad litem recommended that the children not be separated from one another. Despite what he characterized as the "father's apparent refusal to find work post-separation and some evidence that the father may at times undermine the mother's role with the older child," the guardian ad litem recommended that the father receive custody of both children. Karen Turnbow, a psychologist who evaluated the family, recommended that, regardless of which parent was awarded custody, the children not be separated.
With regard to the parties' marital property, the record indicates that the father has a one-third interest in a limited liability company ("the LLC") that owns a number of rental properties. The evidence indicates that the father's interest in the LLC is valued at approximately $334,000, less indebtedness of $260,366, which is, according to the evidence in the record, attributable to the father.[2] The father testified that the parties had purchased the marital home for $75,000, and that the home was subject to mortgage indebtedness of approximately $49,559. The mother testified that she believed the marital home was worth between $90,000 and $100,000. The parties also owned a time-share interest in a condominium in New Orleans; that time-share interest was valued at $15,000 and was not subject to indebtedness. The father testified that the parties owed $6,373 on a loan; he was not sure how that debt was incurred. The only other indebtedness was a credit-card debt totaling approximately $27,000; the parties had used that credit-card account to pay other indebtedness, including the indebtedness on their vehicles. The husband had made payments on the mortgage and other indebtedness during the parties' separation. The parties did not present values regarding any other marital property.
The trial court ordered that the marital home be sold and that the proceeds from the sale of the marital home be used to repay the mortgage indebtedness and any other marital indebtedness. The trial court specified that the father was responsible for any remaining, unpaid debt, or that, if the proceeds from the sale of the marital home exceeded the parties' debts, the parties were to equally divide the remaining funds. In addition, the trial court determined the husband's one-third interest in the LLC to be marital property, and it awarded the father the entire one-third interest in the LLC but ordered that the father pay the mother $12,272.34 for her portion of his interest in that entity.
On appeal, the father first argues that the trial court erred in fashioning its custody award. In the divorce judgment, the trial court awarded the father custody of the parties' older child and awarded the mother custody of the younger child. The father argues that the trial court erred in separating the two children; he contends that he should have been awarded custody of both children.
As the father points out, in this state a custody award that works to separate siblings is not favored absent a showing of compelling reasons for the separation. Bishop v.Knight, 949 So.2d 160, 166 (Ala.Civ.App. 2006); Mardisv. Mardis, 660 So.2d 597, 599 (Ala.Civ.App. 1995); andPettis v. Pettis, 334 So.2d 913 (Ala.Civ.App. 1976). This court has explained:
 "As a general rule, this court does not favor a custody determination where siblings are separated. Jensen v. Short, *Page 815 494 So.2d 90 (Ala.Civ.App. 1986). If, however, after receiving ore tenus evidence, the trial court determines there is a compelling reason for the separation, then we are required to review its decision with a strong presumption of correctness. Kennedy v. Kennedy, 517 So.2d 621
(Ala.Civ.App. 1987). The trial court is also guided by the interpersonal relationship between each child and parent, and the interpersonal relationship between the children. Cole v. Cole, 442 So.2d 120
(Ala.Civ.App. 1983).
 "It is also well established that in an initial custody determination, the parties stand on equal footing, without a favorable presumption for either party. Santmier v. Santmier, 494 So.2d 95
(Ala.Civ.App. 1986). We have also held that the relationship of the child to each parent is one of the factors that should be considered. Murph v. Murph, 570 So.2d 692 (Ala.Civ.App. 1990). The paramount consideration of the court in a child custody case, however, is the child's best interest. Jensen, 494 So.2d 90."
Phomsavanh v. Phomsavanh, 666 So.2d 537, 539
(Ala.Civ.App. 1995).
In this case, the record indicates that both parents love the children. Although both parties have demonstrated questionable judgment at times, we agree with the trial court that either parent "would be a fit and proper parent to have the custody of these children." The father insists that he should have been awarded custody of both boys. He cites a number of allegations he made against the mother concerning her ability to parent the children. However, many of those allegations pertain to the mother's attempts to discipline the older child, whose custody was awarded to the father. Further, the mother presented evidence tending to indicate that the father contributed to or exaggerated some of the difficulties that she had had with the older child. The trial court observed the parties as they testified and was in the best position to evaluate their demeanor and credibility; accordingly, we must defer to the trial court's factual findings and its rulings based on those findings. Ex parte Fann, 810 So.2d 631, 633
(Ala. 2001); Ex parte D.W.W., 717 So.2d 793, 795
(Ala. 1998).
It appears from the record that the mother's relationship with the older child has been damaged and is in need of repair; no such evidence was presented with regard to the mother's relationship with the younger child. Also, although the parties testified that the children enjoy a close relationship, there is an eight-year age difference between the children.
In reaching its custody determination, the trial court acknowledged that both the guardian ad litem and the psychologist (in whom "[the trial court] ha[d] all of the confidence in the world") had recommended that the children not be separated. However, despite those recommendations, the trial court believed that its custody determination "would be in the best interest of the two minor children." As noted earlier, the best interests of the children are the paramount consideration in determining custody. Phomsavanh v. Phomsavanh,666 So.2d at 539 (citing Jensen v. Short, 494 So.2d 90
(Ala.Civ.App. 1986)). It is clear that the trial court considered the recommendations of the guardian ad litem and the psychologist but that the evidence presented to the trial court convinced it to reject those recommendations. This court might not have reached the same custody determination as did the trial court. However, given the deference afforded the trial court's judgment when ore tenus evidence is presented in a custody matter, together with the trial court's careful consideration of the recommendations of the guardian ad litem and *Page 816 
the psychologist, we cannot say that the father has demonstrated that the trial court exceeded its discretion in the instant case.
The father next argues that the trial court's January 3, 2006, "judgment" contains a mathematical error. The father predicates this argument on his erroneous assumption that the January 3, 2006, order constituted the final judgment in this case and that the May 18, 2006, judgment was a nullity. As already discussed, however, the January 3, 2006, order did not constitute a final adjudication of all of the issues presented in this divorce action, and, accordingly, that order did not constitute a final judgment; the May 18, 2006, judgment constituted the final judgment in this matter. The May 18, 2006, judgment corrected the mathematical error contained in the January 3, 2006, order. Therefore, the father's argument on this issue is moot. See Ex parte Coosa Valley Health Care,Inc., 789 So.2d 208, 218 n. 4 (Ala. 2000).
The father last argues that the trial court's property division was inequitable. In reviewing the judgment of a trial court in a divorce case, in which the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Accordingly, the trial court's judgment based on those findings is presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v.Hartzell, 623 So.2d 323 (Ala.Civ.App. 1993). The ore tenus presumption of correctness is based on the trial court's being in the unique position of being able to observe the witnesses and to assess their demeanor and credibility. Hall v.Mazzone, 486 So.2d 408, 410 (Ala. 1986). A division of marital property rests soundly within the trial court's discretion. Albertson v. Albertson, 678 So.2d 118
(Ala.Civ.App. 1996); Welch v. Welch, 636 So.2d 464
(Ala.Civ.App. 1994). Factors that the trial court may consider in fashioning a property division include "the source of [the parties'] common property, the ages, sex and health of the parties, their future prospects and station in life, the length of the marriage, and in appropriate cases, the conduct of the parties regarding the cause of divorce." Lutz v. Lutz,485 So.2d 1174, 1176 (Ala.Civ.App. 1986). The trial court's division of marital property does not have to be equal, only equitable, and the determination of what is equitable rests within the sound discretion of the trial court. Golden v.Golden, 681 So.2d 605, 608 (Ala.Civ.App. 1996).
The father testified that the parties earned a total gross annual income of $100,000 and that the mother earned approximately $50,000. Thus, it appears that the parties' incomes at the time of the separation were virtually equivalent. The father had not sought new employment since his move to Cullman. Although the father blamed that failure on the purported need to transport the youngest child on a daily basis while the parties alternated custody of the child, the trial court found that excuse "utterly ridiculous."
The trial court awarded the father his entire interest in the LLC, but it ordered him to pay the mother $12,272.34, representing her portion of his current interest in the LLC.[3]
In addition, the mother was awarded the interest in the parties' time-share condominium, which was valued at $15,000. The trial court ordered the marital home sold and the proceeds used to pay the parties' marital debts; if any proceeds were left over after the payment of the marital debts, the parties were to equally *Page 817 
divide those proceeds. Thus, although the father argues on appeal that he was ordered to be responsible for all of the parties' marital debts, the parties in fact share the payment of those debts.
The evidence indicates that the marital home is valued at between $90,000 and $100,000, and that, after the mortgage indebtedness is repaid, the equity in the marital home will be between $40,000 and $50,000. The father testified that the parties' marital debts, excluding the mortgage indebtedness, totaled approximately $33,373. The mother was awarded the parties' time-share condominium, and the father retained his interest in the LLC. Given the parties' assets and debts, we cannot say that the father has demonstrated that the trial court exceeded its discretion in fashioning its property division. Accordingly, we affirm.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
[1] Because the father asserted that the May 18, 2006, judgment was a nullity, the arguments in his brief to this court address only the January 3, 2006, order. We address the father's appeal as if the arguments in his brief were asserted with regard to the May 18, 2006, final judgment.
[2] The evidence indicates that the witness who appraised the LLC attributed one-third of the LLC's outstanding indebtedness to the father for the purpose of valuing his interest in the LLC.
[3] On appeal, the father does not challenge the trial court's determination that his interest in the LLC constituted marital property.