40 So.3d 723 (2009)
A.B.
v.
J.B.
2080078.
Court of Civil Appeals of Alabama.
December 18, 2009.
*725 Kelly Tipton Lee, Elmore, for appellant.
Submitted on appellant's brief only.
PER CURIAM.
A.B. ("the wife") appeals from a judgment of the Montgomery Circuit Court divorcing her from J.B. ("the husband"), awarding primary physical custody of the parties' minor child, J.S.B., to the husband, awarding the wife visitation with the child, ordering the wife to pay child support, assessing a child-support arrearage against the wife, and requiring the wife to pay one-half of the costs of health insurance for the child and one-half of any extra-curricular expenses for the child. The trial court also ordered the parties to equally share a debt owed to the Internal Revenue Service ("the IRS") and ordered the wife to pay one-half of the husband's attorney's fees. We affirm in part and reverse in part.

Procedural Background
On November 29, 2007, the wife filed a complaint in the Elmore Circuit Court seeking a divorce from the husband. The wife alleged that one minor child, J.S.B., had been born to the parties on December *726 22, 2003. The husband answered the complaint, asserting that not one but two children had been born to the parties: D.B., who was born in August 1997 during the parties' common-law marriage, and J.S.B., who was born to the parties after a ceremonial marriage. The husband counterclaimed for custody of the children, visitation, child support, and attorney's fees. The husband also sought a change of venue to the Montgomery Circuit Court, asserting that he and the wife had lived in Montgomery County during their marriage; the Elmore Circuit Court granted that motion.
After the case was transferred to the Montgomery Circuit Court ("the trial court"), the parties stipulated that the oldest child, D.B., was not the husband's biological child. The parties also stipulated that whomever received custody of J.S.B. would be entitled to claim her as a dependent for tax purposes.
On August 5, 2008, after a hearing, the trial court entered a judgment divorcing the parties, awarding joint legal custody of J.S.B. to both parties but awarding primary physical custody to the husband, and ordering the wife to pay $551 each month in child support. The trial court also established a child-support arrearage in the amount of $5,000 to be paid at the rate of an additional $100 per month; ordered the wife to pay an additional amount to the husband representing one-half of the cost of health insurance for the child; ordered the parties to share equally in the costs of the child's extracurricular and sports-related activities; and ordered the parties to share equally the costs of any debts owed to the IRS. Finally, the trial court ordered the wife to pay the husband's attorney's fees.
The mother timely filed, pursuant to Rule 59, Ala. R. Civ. P., a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. On that same date, the mother filed a motion seeking the recusal of the trial judge. On September 9, 2008, after oral arguments, the trial court denied the wife's postjudgment motion; it also entered an order granting her motion to recuse.[1] On September 10, 2008, the husband filed a response opposing the wife's postjudgment motion; in that motion, the husband's attorney submitted documentation in support of his attorney's fees.
On September 17, 2008, the wife filed a "Motion to Reconsider." On September 20, 2008, the wife appealed.

Background
At the hearing in this matter, at which ore tenus evidence was received, the wife testified that she and the husband had married on February 11, 1998. According to the wife, she and the husband had separated in November 2006 because they could not get along; the wife attributed their marital problems to money issues and the husband's substance-abuse issues. According to the wife, the husband had sought treatment for his substance-abuse problem at an inpatient treatment facility. The wife also admitted that she had attempted to have the husband committed to a mental-health treatment facility during November 2006, around the time of the parties' separation, because of the husband's suicidal and threatening gestures. *727 The wife's petition for commitment was dismissed.
At the hearing, the wife invoked her Fifth Amendment right when questioned as to whether she had engaged in an adulterous affair during the marriage. The wife also invoked her Fifth Amendment right when asked if, while in the presence of her daughters, she had cohabitated with a man who was still married to another woman. The wife, however, admitted that certain incriminating photographs of herself and her paramour, Timothy V., had been posted on her "MySpace" Internet account in 2007, while the parties were still legally married but were separated. The wife testified, however, that her account had been "hacked."
The wife testified that, upon the parties' separation, she and the children had remained in the marital residence and the husband had initially moved out. Apparently, the husband later moved back into the marital residence and the wife moved out of that residence; the children remained in the marital residence with the husband. After leaving the marital residence, the wife lived at various addresses, moving in with different female friends. The wife eventually moved into a house in Elmore County. D.B. subsequently moved in with the wife; at the time of the hearing, D.B. continued to live with the wife.
The wife testified that she and the husband had agreed that they would alternate three-month custodial periods with J.S.B. According to the wife, J.S.B. had then lived with the wife for a three-month period and the wife had then returned J.S.B. to the husband; the wife testified that the husband had not returned J.S.B. to the wife after his three-month custodial period. The wife acknowledged that, at the time of the hearing, J.S.B. had been residing with the husband for 19 months. The wife admitted that, during that 19-month period, she had not provided any financial support to J.S.B. The wife claimed that the husband occasionally had refused to allow the wife to visit with J.S.B. The wife testified that D.B. and J.S.B. saw each other "every other weekend" and that they had a "normal sister relationship." According to the wife, both D.B. and J.S.B. were insured through Medicaid.
The wife acknowledged that she and the husband had been living together when D.B. was born and that they had initially told D.B. that the husband was her father. By the time of the hearing, however, D.B. had been told that the husband was not her father. The wife had never sought to collect child support from D.B.'s biological father.
At the time of the hearing, the wife had been employed for approximately one year; she was working full-time and her gross monthly income was $1,833. She explained that she had not worked during most of the marriage. The wife testified that the parties owned no real property and no personal property. According to the wife, the parties owed a debt to the IRS. The wife also testified that any debt the parties might have owed to V.M. and B.M., J.S.B.'s paternal grandmother and paternal stepgrandfather, had been satisfied through the conveyance of personal property; she introduced into evidence a document purporting to attest to the satisfaction of that debt.
The wife testified that she had been admitted to a mental-health facility in 2006 for the treatment of depression; she acknowledged that she had suffered from depression in the past, but she denied that her depression required medication. While at the mental-health facility, the wife was diagnosed with bipolar disorder; she testified, however, that she had been misdiagnosed. She denied taking any medications at the time of the hearing.
*728 The husband testified that, at the time of the hearing, he and J.S.B. were living with the paternal grandmother and the paternal stepgrandfather. According to the husband, he was employed full-time with a cable company and he earned approximately $1,850 per month; he had been employed with that company for two months at the time of the hearing. According to the husband, he incurred $500 per month for child care. He had recently obtained health insurance through his employer, covering J.S.B. at a cost of approximately $264 per month.
On cross-examination, the husband admitted that he was certified as a plumber and that previously he had earned as much as $24 an hour. The husband testified that he was no longer able to work as a plumber because of certain medical conditions. The husband testified that he had been diagnosed with attention deficit/hyperactivity disorder and that he had two ruptured disks in his back. For those conditions, he had been prescribed and was taking Adderall, a stimulant, and Lorcet, a pain medication. The husband also admitted that, on occasion, he took Xanax, an antianxiety medication, and that he had recently taken Flexeril, a muscle relaxer, and Cymbalta, an antidepressant.
The husband testified that, during the parties' marriage, he had inadvertently discovered the wife having sexual relations with Timothy V., the husband's best friend, in the marital home. The husband testified that he had subsequently admitted himself to a mental-health facility for three days. The husband admitted that he had attempted suicide on more than one occasion and that one of those attempts had occurred around the time of the parties' separation, in November 2006. According to the husband, he subsequently had been held in the same mental-health facility in late November 2006, also around the time of the parties' separation, after the wife had filed a petition to have him committed. A guardian ad litem had been appointed for the husband at that time, and he had remained at the facility for six to seven days. After a commitment hearing, the wife's petition was dismissed.
According to the husband, the wife had worked very little during the marriage. The husband testified that he had not prevented her from working and that the wife had been able to maintain employment but had elected not to do so. The husband testified that the wife has a bad temper, that she had struck him during the marriage, and that she had done so in the presence of the children.
The husband denied that he had ever prevented the wife from exercising visitation with J.S.B. According to the husband, the wife had wanted both children to live with him at one point because, he said, the wife had indicated that the husband was the better parent. The husband testified that the wife later changed the living arrangement, moving D.B. in with her but leaving J.S.B. with him. According to the husband, he had asked the wife on many occasions for financial help with J.S.B., but, he said, the wife had responded that she would not "pay anything until a judge told her to pay." The husband also testified, although confusingly, regarding "stimulus" checks from the federal government that had been "cancelled out" and that "they had took the [stimulus] checks to pay the bill." The husband's reference to "the bill" presumably referred to the debt the parties owed the IRS.
Tiffany V. testified that she and her former husband, Timothy V., had been friends with the husband and the wife for years. According to Tiffany, she and Timothy are now divorced because of an adulterous affair that occurred between the wife and Timothy in 2006. Tiffany also *729 testified that the husband had been the primary caregiver to J.S.B. during the parties' marriage.
V.M., J.S.B.'s paternal grandmother, testified that the husband and the wife had lived with her at certain times during their marriage. The paternal grandmother testified that, during the time the husband and the wife lived with her, the wife did not help much with cooking and cleaning. According to the paternal grandmother, the husband was more patient with the children and had disciplined them more appropriately. The paternal grandmother also testified that she had witnessed the wife strike D.B. and drag her by her hair.
The paternal grandmother also testified that she had had to retire because of the health of the paternal step-grandfather, who was on oxygen. She also testified that, despite the fact that she was at home all day, J.S.B. needed to be in day care while the husband worked because the paternal stepgrandfather liked to keep the house dark and "it is not good for a child to be in there." According to the paternal grandmother, the husband paid her $800 per month to live in her house; that amount was intended to cover rent, utilities, and groceries for the husband and J.S.B.

I. Custody

The wife first challenges the award of custody of J.S.B. to the husband.
"`When evidence in a child-custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determinationit hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.'"
Burgett v. Burgett, 995 So.2d 907, 912 (Ala. Civ.App.2008) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)).
The wife asserts that the trial court's award of custody of J.S.B. to the husband separates the two half sisters, D.B. and J.S.B., and that no compelling reason existed to separate D.B. and J.S.B. In support of her argument, she cites, among other cases, Bishop v. Knight, 949 So.2d 160 (Ala.Civ.App.2006); Mardis v. Mardis, 660 So.2d 597 (Ala.Civ.App.1995); and Gandy v. Gandy, 370 So.2d 1016 (Ala.Civ. App.1979).
We acknowledge that some cases, including those cited by the wife, have indicated that a trial court may separate siblings only based on compelling reasons, but we are convinced that those cases do not accurately summarize Alabama law. Rather, our caselaw more accurately holds that siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue. See, e.g., Mobley v. Mobley, 414 So.2d 107 (Ala.Civ.App.1982); Kennedy v. Kennedy, 517 So.2d 621 (Ala.Civ.App. 1987); see also Alverson v. Alverson, 28 So.3d 784, 790 (Ala.Civ.App.2009) (Moore, J., concurring in part and concurring in the result in part) (canvassing prior Alabama cases concerning separation of siblings).
We also note that some authority supports treating the separation of half siblings differently that the separation of full siblings. See Hannan v. Hannan, 676 So.2d 1340, 1342 (Ala.Civ.App.1996). However, we recognize that, in many cases, half siblings may be as close as full siblings. The mere fact that they may not share the same biological parentage does not necessarily mean that half siblings do not develop the same bonds as full siblings or that half siblings do not rely on each *730 other for support. See Marriage of Swenka, 576 N.W.2d 615, 618 (Iowa Ct.App. 1998) (recognizing the strong public policy of keeping siblings, including half siblings, together following a divorce to provide children the important benefit of maintaining familial ties and lessening the trauma of divorce). When resolving a custody dispute, particularly in these days of blended families, a trial court should not perfunctorily separate half siblings without giving sufficient consideration to the best interests of the children at issue.
In this case, J.S.B. and D.B. had lived together as sisters for the first three years of J.S.B.'s life. D.B. later learned that J.S.B. was not her full sibling but was her half sibling. The husband testified that the wife had indicated to him that J.S.B. should remain in the husband's custody while D.B. should live with the wife. The husband and the wife actually agreed to a living arrangement pursuant to which the children were separated; that arrangement continued for 19 months before the trial. At trial, the parties presented little evidence as to what impact separating the siblings might have on J.S.B. The wife, however, testified that, even after a 19-month separation, J.S.B. had maintained a "normal sister relationship" with D.B. Thus, the record reveals no negative impact of the separation on the half siblings.
The trial court heard evidence from which it could have concluded that separating the half siblings served their best interests.[2] Because the wife has not challenged any other aspect of the trial court's award of custody to the husband, we affirm the trial court's judgment as it relates to the custody of J.S.B.

II. Child Support

The wife next asserts that the trial court erred in several ways in establishing its child-support award to the husband.
"Under the well-established ore tenus rule, the trial court's judgment is presumed correct; this court will not reverse the judgment absent a showing that the trial court's findings are plainly and palpably wrong or that the trial court abused its discretion.... Moreover, matters relating to child support `rest soundly within the trial court's discretion, and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and thus is plainly and palpably wrong. Bowen v. Bowen, 817 So.2d 717, 718 (Ala.Civ.App.2001).'"
Scott v. Scott, 915 So.2d 577, 579 (Ala.Civ. App.2005).
First, the wife asserts that the trial court erred in establishing a child-support arrearage when no child-support obligation had been previously established. She asserts that a child-support arrearage, based upon retroactive child support, may not be imposed dating back to the time of the parties' separation, when no complaint for a divorce had been filed and child support had not been sought or ordered. We disagree.
In P.Y.W. v. G.U.W., 858 So.2d 265 (Ala. Civ.App.2003), this court recognized that a trial court has discretion to order a parent to pay retroactive child support for the period after the parents' separation but before the filing of a complaint for a divorce. 858 So.2d at 267-68. The court recognized that the legislature had statutorily recognized this right by enacting Ala. Code 1975, §§ 30-3-110 through -115, but that the right to award retroactive child support had preexisted those statutes. 858 So.2d at 267. The court stated:
"It is a basic principle of Alabama law that a parent has a duty to support his *731 or her minor child and that this duty of support is a fundamental right of all minor children. State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ. App.1995); Ex parte University of South Alabama, 541 So.2d 535, 537 (Ala. 1989). The Alabama Legislature, recognizing this duty, created a cause of action specifically for retroactive child support. See Ala.Code 1975, §§ 30-3-110 through -115.
"Even before §§ 30-3-110 through -115 became effective in March 1994, the Alabama Legislature had made it clear that retroactive child support is favored in order to ensure that minor children receive the support that is their due. Section 26-17-9(d), Ala.Code 1975, provided, and still provides, in pertinent part, that a child's mother may file `[a] complaint for nonsupport of [the] child... alleging sufficient facts that the defendant owes a duty of support, provided, that support payments have not been ordered previously pursuant to a decree of divorce.' Moreover, § 26-17-8, Ala. Code 1975, specifically provided before the enactment of §§ 30-3-110 through -115, and still provides, that a court may order a father to pay retroactive child support for a period of two years prior to the filing of a complaint, or the birth of the child, whichever is the shorter time period.
"....
"In the present case, the mother argues that §§ 30-3-110 through -115 `show an intent by the Legislature to bolster the rights of minors to [child] support which had previously been guaranteed by earlier statutes [such as §§ 26-17-8 and 26-17-9] and the common law.' We agree. Section 30-3-110 provides:
"`There is hereby created a civil action to establish an order of retroactive support which may be brought against a non-supporting parent who has a duty to support as the legal parent of a child or children but has failed to provide support. The action may be brought by the parent or guardian with physical or legal custody who is providing the actual care and support for the child or may be brought by the Department of Human Resources pursuant to the provisions of [Ala.Code 1975,] Section 38-10-1 et seq. An action under this section can be brought only if support has not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.'
"Section 30-3-114, Ala.Code 1975, provides:
"`The order of retroactive support shall be a sum certain judgment and may cover all periods in which the non-supporting parent failed to provide support. For all time periods in which support is requested, the court shall consider the needs of the child or children and the ability of the parents to respond to those needs, and shall determine the amount of support due for each period by application of the child support guidelines found in Rule 32 of the Alabama Rules of Judicial Administration based upon the circumstances during the time period for which support is sought....'
"Given the record presented, including the facts discussed above, we see no basis for the trial court not to have made a retroactive child-support award in this case. There is no evidence in the record indicating that the mother ever gave the father reason to believe that she would have no need for the father's financial assistance in rearing the child, or that the father ever relied on any such representation. The mother filed *732 her complaint less than a year after the child's birth and only about 10 months after the father left the mother and the child. There is no evidence explaining the father's failure to pay child support or tending to indicate that it would be inequitable to require him to pay child support retroactively."
858 So.2d at 267-68 (footnote omitted).
Thus, the court in P.Y.W. recognized that, under the proper circumstances, retroactive child support is recoverable even for those periods preceding the filing of a complaint for a divorce. Cf. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998) (awarding retroactive child support for the one-year period preceding the divorce hearing but after the complaint for divorce had been filed). In this case, the husband testified that he had provided the sole support for J.S.B. for the 19-month period preceding the divorce hearing. Thus, the trial court was within its discretion in ordering the wife to pay retroactive child support in this case.
We agree with the wife, however, that the amount of the arrearage awarded in this case must be reversed. As recognized in § 30-3-114, an award of retroactive child support is calculated pursuant to the child-support guidelines in effect for the period the child support is awarded. Because we cannot determine how the trial court arrived at the $5,000 child-support-arrearage amount and because there is no indication in the record that the trial court applied the appropriate child-support guidelines in calculating the arrearage, we reverse that aspect of the trial court's judgment and remand the cause for further proceedings. On remand, we instruct the trial court to apply the child-support guidelines that were in effect during that period for which retroactive child support is to be awarded.
The wife next asserts that the trial court erred in its calculation of her prospective child-support obligation by twice including an amount attributable to the cost of the husband's monthly health-insurance premium. We agree. At the time the trial court entered its judgment, Rule 32(B)(7)(a), Ala. R. Jud. Admin., provided that "[t]he actual cost of a premium to provide health insurance benefits for the children shall be added to the `basic child support obligation' and shall be divided between the parents in proportion to their adjusted gross income in the percentages indicated on the Child Support Guidelines form (Form CS-42)."[3] In calculating the wife's child-support obligation, the husband's monthly health-insurance premium of $264.33 was included in the parties' total child-support obligation; that total obligation was then divided by each parent's percentage share of the income, as required by Rule 32(B)(a)(7), to arrive at the wife's monthly child-support obligation of $551. Thus, the trial court properly included the husband's monthly health-insurance premium when calculating the wife's child-support obligation.
In the divorce judgment, however, the trial court also stated: "The Wife shall pay $122.00 per month, or one-half the cost of health insurance for the minor child." Because the trial court properly included the husband's monthly health-insurance premium in calculating the wife's monthly child-support obligation, we conclude that the trial court erred in ordering the wife to pay an additional $122 per month for one-half of the cost of the health insurance for J.S.B.
*733 The wife next asserts that the trial court erred in ordering her to pay as child support one-half of the costs for J.S.B.'s extracurricular activities. She argues that the extent of her legal obligation is set forth in Rule 32, Ala. R. Jud. Admin., and that any other legal obligation must be established through caselaw or through legislation, as was recognized in Ex parte Bayliss, 550 So.2d 986 (Ala.1989).
Rule 32(A), Ala. R. Jud. Admin., provides that
"[t]here shall be a rebuttable presumption, in any judicial or administrative proceeding for the establishment or modification of child support, that the amount of the award that would result from the application of these guidelines is the correct amount of child support to be awarded. A written finding on the record indicating that the application of the guidelines would be unjust or inappropriate shall be sufficient to rebut the presumption if the finding is based upon:
"(i) A fair, written agreement between the parties establishing a different amount and stating the reasons therefor; or
"(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable."
Thus, although the amount of child support established by the guidelines creates a presumption as to the correct amount of child support to be awarded, that presumption is rebuttable, and, under certain circumstances, a trial court has the discretion to award child support outside the guidelines.
Additionally, Rule 32(C)(4), Ala. R. Jud. Admin., provides:
"In addition to the recommended child-support order, the court may make additional awards for extraordinary medical, dental, and educational expenses if (i) the parties have in writing agreed to these awards or (ii) the court, upon reviewing the evidence, determines that these awards are in the best interest of the children and states its reasons for making these additional awards."
In this case, however, no evidence was presented to rebut the presumption created by the guidelines, and the trial court's final judgment failed to indicate that application of the guidelines would be manifestly unjust or inequitable. The final judgment also failed to include the language necessary to support an award under Rule 32(C)(4). Therefore, requiring the wife to pay one-half of J.S.B.'s extracurricular expenses is unsupported by the record and was error.
For the above-stated reasons, we reverse the trial court's child-support award, and we remand the cause for further proceedings.

III. The IRS Debt

Next, the wife argues that the trial court erred to reversal in its division of the parties' indebtedness to the IRS. Specifically, she asserts that the IRS retained a $600 stimulus check owed to her and applied it to the parties' debt of $976.88. Thus, she argues, she paid more than one-half of the parties' debt to the IRS and, consequently, the trial court's judgment incorrectly ordered her to share one-half of the IRS debt. We, however, find no reversible error in this aspect of the final judgment.
"When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly *734 and palpably wrong. A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court."
Stone v. Stone, 26 So.3d 1232, 1236 (Ala. Civ.App.2009) (citations omitted).
During the trial, the wife submitted no documentary evidence regarding the IRS debt and no testimony regarding her payment of the debt. In fact, the wife's testimony regarding this debt was, at best, vague and inconclusory. She testified that the parties owed a debt to the IRS, that she had not received a stimulus check from the federal government, and that she did not know if she was entitled to receive one. The husband also offered vague testimony regarding his receipt of stimulus checks. Neither party offered any testimony establishing the amount of the debt owed to the IRS, whether that debt had been paid and, if so, by whom and to what extent, and neither party offered any documentary evidence to establish such payments.[4] Because at the time of the trial, the evidence established only that the parties owed a debt to the IRS, we find no inequity in the trial court's division of that debt, and we will not reverse the trial court's judgment ordering the parties to equally share the cost of that debt. See Beatty v. Beatty, 991 So.2d 761, 765 (Ala.Civ.App.2008) ("`In order for this court to consider an error asserted on appeal, that error must be affirmatively demonstrated by the record.'" (quoting Elliott v. Bud's Truck & Auto Repair, 656 So.2d 837, 838 (Ala.Civ.App. 1995))). We, therefore, affirm that aspect of the trial court's judgment.

IV. Attorney's Fees

Finally, the wife argues that the trial court erred to reversal in ordering her to pay the husband's attorney's fees when no evidence as to the reasonableness or the amount of those fees was introduced into evidence. We agree.
In Campbell v. Campbell, [Ms. 2070724, April 24, 2009] ___ So.3d ___ (Ala.Civ. App.2009), a majority of this court affirmed a judgment awarding Mrs. Campbell 50% of her attorney's fees even though the record contained no evidence as to the amount of attorney's fees incurred by her. Judge Moore dissented, stating:
"The trial court simply awarded the wife 50% of her fees without knowing the total amount of the fees. Although our caselaw holds generally that in divorce cases a trial court may award fees without taking evidence as to the reasonableness of the amount of the fees, see Benton v. King, 934 So.2d 1062, 1069 (Ala. Civ.App.2005) (citing Ex parte James, 764 So.2d 557, 560 (Ala.1999) (plurality opinion)), I have not been able to find a single Alabama case, or a case from any other jurisdiction, in which that principle has been applied to a percentage award, as opposed to an award of a specific dollar amount. Logically speaking, a court cannot determine whether 50% of a total attorney fee is a reasonable award without knowing the total amount of the fee, regardless of whether reasonableness is measured by evidence presented *735 to the court or based on the court's own experience and insight. We have approved awards of a percentage of a recovery for the client, i.e., a contingency-fee award, when the court had information regarding the customary nature of such an award, see Benton, supra, but that award differs materially from an award of a percentage of an unknown amount of accrued attorney fees. A trial court is vested with broad discretion in determining the amount of attorney fees to be awarded in a divorce action, see Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991), but, in my opinion, it exceeds that discretion when it makes a percentage award without knowing the total amount of the fees."
Campbell, ___ So.3d at ___ (Moore, J., concurring in part, concurring in the result in part, and dissenting in part).[5] We now agree with Judge Moore's analysis and hold that a trial court may not order one party to pay another party's attorney's fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount. To the extent that Campbell is in conflict, it is overruled.
In this case, at the time the trial court ordered the wife to pay the husband's attorney's fees, the record contained no evidence as to the amount of those fees. The husband did not provide any evidence as to the amount of his attorney's fees until after the trial court had lost jurisdiction of the case. Hence, the trial court could not possibly have determined that those fees were reasonable in amount, and its judgment as to this issue is due to be reversed.

Conclusion
We affirm the trial court's award of custody to the husband and its division of the marital debt. We reverse the trial court's child-support calculation and the trial court's award of attorney's fees, and we remand the cause for further proceedings consistent with this opinion.
The wife's request for an award of attorney's fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur.
THOMAS, J., concurs in part and concurs in the result, with writing.
PITTMAN, J., concurs in part, concurs in the result in part, and dissents in part, with writing.
THOMAS, Judge, concurring in part and concurring in the result.
Although I concur in all other aspects of the main opinion, I concur only in the result in Part I of the main opinion, which is that portion of the opinion addressing the custody award in the present case. I do not agree that our caselaw does not require that the record reveal compelling reasons supporting a separation of siblings in a custody determination. See Alverson v. Alverson, 28 So.3d 784, 787-788 (Ala. Civ.App.2009); Mardis v. Mardis, 660 So.2d 597 (Ala.Civ.App.1995); and Jensen v. Short, 494 So.2d 90 (Ala.Civ.App.1986). I do not see this requirement as imposing any undue burden on either parent or on the trial court, nor do I see it as anything *736 more than a guiding principle designed to assist the trial court in determining the best interest of the children whose custody it must decide.
PITTMAN, Judge, concurring in part, concurring in the result in part, and dissenting in part.
I concur in Parts II and III of the main opinion. I concur in the result as to Part I. As to Part IV, which overrules Campbell v. Campbell, [Ms. 2070724, April 24, 2009] ___ So.3d ___, ___ (Ala.Civ.App.2009), I believe, in contrast to the view of the per curiam opinion, that Campbell is consistent with appellate-review principles applicable to trial-court attorney-fee awards in domestic-relations cases. See, e.g., Walding v. Walding, 983 So.2d 1128, 1132 (Ala.Civ. App.2007) (affirming trial court's judgment directing husband to pay one-half of wife's undetermined attorney fees). Because I would prefer not to place this court in the position of micromanaging a settled area of trial-court discretion, see generally Ex parte James, 764 So.2d 557, 560 (Ala.1999), I dissent from Part IV of the main opinion.
NOTES
[1] On appeal, the wife has not challenged the propriety of the trial judge's granting the wife's motion to recuse on the same date that he denied her postjudgment motion. Additionally, after the trial judge entered an order of recusal, the case was subsequently reassigned to another trial judge, who also entered an order of recusal. The case was then reassigned to the sole remaining active trial judge in the domestic-relations division of the Montgomery Circuit Court, who also entered an order of recusal.
[2] The issue of D.B.'s custody was not before the trial court.
[3] Rule 32(B) was amended effective March 1, 2009. What was formerly Rule 32(B)(7)(a) is now Rule 32(B)(7)(d).
[4] Such evidence was available to the wife, but she failed to offer that evidence at the time of the hearing. The wife first presented evidence of her purported payment of the IRS debt in support of her postjudgment motion, which the trial court denied. A trial court may, but is not required to, accept evidence proffered in support of a postjudgment motion. See, e.g., Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369-70 (Ala. 1988) (recognizing that "a trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so," and that "[w]e will reverse only if the trial court abuses that discretion"). Thus, the trial court was within its discretion in declining to consider the wife's newly proffered evidence.
[5] Judge Bryan joined Judge Moore's writing on all points. Judge Bryan wrote separately regarding the attorney-fee issue, stating that, in addition to the reasons expressed by Judge Moore, "the wife [had] neither requested attorney fees nor presented any evidence regarding her need for such assistance." Campbell, ___ So.3d at ___ (Bryan, J., concurring in part, concurring in the result in part, and dissenting in part).