THOMAS, Judge.
Phyllis Johnson (“the mother”) and Rodney Johnson (“the father”) were married in 1999. The parties have two children, a son who was born in 2002 and a daughter who was born in 2005. In approximately September 2008, the parties separated, and, in March 2009, the mother sued the father, seeking a divorce and custody of the parties’ children. The father counterclaimed for a divorce and also sought custody of the children. Pursuant to the parties’ out-of-court agreement, the mother had pendente lite custody of the daughter and the father had pendente lite custody of the son. This agreement was later set out in the trial court’s pendente lite order in October 2009. In March 2010, the trial court entered a judgment that, among other things, awarded the parties joint legal custody of the children, awarded the mother physical custody of the daughter, and awarded the father physical custody of the son. The mother appeals.
The evidence at trial was sparse. Both parties are employed. The mother works for Ilpea Industries. Her hours are 5:00 a.m. to 3:00 p.m. four days a week; she does not typically work on Fridays. The mother testified that her father, the children’s maternal grandfather, would meet her at her house on Mondays, Tuesdays, and Thursdays and that he would take the daughter to his home to get ready for preschool. The mother said that she would take the daughter to the father’s mother on Wednesdays and when she worked on Fridays.
The father works for his father at a used-automobile dealership. His hours are 9:00 a.m. to 5:00 p.m. He said that he would pick up the son from school and that the son would stay at the automobile dealership with him until 5:00. According to the father, the office at the automobile dealership included a play area for the son, complete with toys, a kitchen area, and a place for the son to nap if he became tired.
The mother contended that she had been the primary caregiver for both children during the marriage even though she had also worked outside the home. She said that the father would come home from work and then go and play video games with his friends. The mother indicated that the father’s family interfered “a lot” and that the father made her feel like he sided with his family over her. She also complained that the father did not do his fair share of the work around the home, noting that she worked outside the home, took care of the children, cleaned the home, and did yard work. The father denied spending considerable time away from the home to play video games and said that he had spent his time with his family most evenings after work. The father said that both he and the mother had provided care for both children during the *786 marriage, depending largely on their work schedules.
After the parties separated, each parent cared for the child in his or her custody. Neither party testified that they had found fault with the other parent’s caregiving in general. However, the father did testify that the mother had once punished the son by spanking him and locking him in a dark room. This action by the mother, said the father, caused the son not to want to visit the mother for a time.
The mother admitted that she had spanked the son for misbehaving on the occasion at issue and that, because it was the son’s bedtime, she had sent him to his room, where she had turned off the light. She denied that she locked him in the dark room, stating instead that the door had no doorknob or lock and that the door was cracked open. The mother further explained that she sometimes used time-outs and sometimes spanked the children with her hand on their bottoms as methods of discipline but that time-outs were a more effective discipline method for the daughter than for the son. The record does not contain any testimony regarding the father’s discipline methods.
The record indicates that the mother had had difficulty with her living arrangements during the pendente lite period. She first lived with the father’s mother. She then rented a house that required fairly substantial improvements, which she had had made to the house. That house flooded in early December 2009, and the mother was temporarily living with a coworker at the time of trial in January 2010. However, the mother said that she would be moving back into her house soon. The father lived with his father after the foreclosure of the mortgage on the marital residence, which occurred sometime after the parties’ separation. The father currently has his own residence on land owned by his grandparents.
As noted above, the parties had agreed to a split-custody arrangement pendente lite. The mother testified that she had allowed the son to live with the father pendente lite because the son was enrolled in a school near the former marital residence and she was living farther away from that school after the separation. The daughter, said the mother, was enrolled in preschool at the time of trial, but she had not been enrolled in school at the time the parties separated.
The trial court did not specify its reason for separating the siblings in its judgment. However, the trial court did question the father at trial concerning how long the children had been living separately. The father told him that the children had been living apart for approximately two years.
On appeal, the mother argues that the trial court’s custody judgment should be reversed. She relies on the principle that a trial court should not enter a custody award that serves to separate siblings absent a compelling reason to do so and that such a custody award will be affirmed only if the separation is in the best interest of the children. See Dunn v. Dunn, 972 So.2d 810, 814-15 (Ala.Civ.App.2007). As we explained in Dunn,
“ ‘[a]s a general rule, this court does not favor a custody determination where siblings are separated. Jensen v. Short, 494 So.2d 90 (Ala.Civ.App.1986). If, however, after receiving ore tenus evidence, the trial court determines there is a compelling reason for the separation, then we are required to review its decision with a strong presumption of correctness. Kennedy v. Kennedy, 517 So.2d 621 (Ala.Civ.App.1987). The trial court is also guided by the interpersonal relationship between each child and parent, *787 and the interpersonal relationship between the children. Cole v. Cole, 442 So.2d 120 (Ala.Civ.App.1983).
“ ‘It is also well established that in an initial custody determination, the parties stand on equal footing, without a favorable presumption for either party. Santmier v. Santmier, 494 So.2d 95 (Ala.Civ.App.1986). We have also held that the relationship of the child to each parent is one of the factors that should be considered. Murph v. Murph, 570 So.2d 692 (Ala.Civ.App.1990). The paramount consideration of the court in a child custody case, however, is the child’s best interest. Jensen, 494 So.2d 90.’
“Phomsavanh v. Phomsavanh, 666 So.2d 537, 539 (Ala.Civ.App.1995).”
972 So.2d at 814-15. Other factors relevant to a determination of the best interest of the children in a custody case are “the sex, age, and health of the [children]; the [children’s] emotional, social, moral, and material needs; and the parties’ ages, character, stability, health and home environment.” Mardis v. Mardis, 660 So.2d 597, 599 (Ala.Civ.App.1995).
The mother argues that no compelling reason for separating the children exists in this case and that the evidence does not establish a basis for determining that the separation of these siblings is in their best interest. The record contains no evidence concerning the interpersonal relationship between the children, and it reveals very little about the relationships between the parents and each child. The only indication of a stressed relationship between the mother and the son is the testimony that,for a time, the son did not wish to visit with the mother after the incident in which the mother allegedly punished him by locking him in a dark room. The record suggests that the parents had agreed pen-dente lite that the son’s best interest would be furthered by keeping him in the school in which he was enrolled, and the trial court may well have considered the fact that the son had attended that school for at least three years by the time of trial when it decided to place the son in the custody of the father.
However, based on the lack of evidence concerning the relationship between the children or between the children and the parents, we cannot discern any reason for the separation of these two siblings, who are only three years apart in age. See Pettis v. Pettis, 334 So.2d 913, 914 (Ala.Civ.App.1976) (reversing a child-custody award separating three-year-old and five-year-old siblings, noting “the further consideration of the need of the children to be together” and stating that “[a] separation of two such young children should, in the judgment of this court, be permitted only out of extreme necessity”). In short, because of the dearth of evidence relating to the factors relevant to the custody determination, we cannot conclude that the trial court’s judgment separating these siblings is in their best interest. The trial court’s custody judgment is therefore reversed.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., concurs specially.